UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| FOAM SUPPLIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:05CV1772 CDP |
| | ) | |
| THE DOW CHEMICAL | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Foam Supplies, Inc. (FSI) alleges antitrust violations, breach of

contract, and tort claims against The Dow Chemical Company. These claims arise

out of Dow's failure to continue selling methyl diphenyl diisocyanate (MDI) and

polyols to FSI. I have previously dismissed FSI's claims of breach of oral

contract, fraudulent misrepresentation, and unjust enrichment. Before me now are

defendant's motions to dismiss and for partial summary judgment. Dow seeks to

dismiss the additions made in FSI's amended complaint and seeks judgment on

FSI's antitrust claims. Dow argues that the undisputed evidence shows it does not

have monopoly power and that there is no dangerous probability that it could

obtain or exercise monopoly power in the relevant market. For the reasons that

follow, I agree with Dow that it is entitled to judgment on all of FSI's antitrust

claims.  I agree with FSI, however, that its amended complaint states a claim for breach of confidentiality agreement, so I will deny the motion to dismiss to that extent.

## Background

Dow manufactures chemicals including MDI and polyols.  FSI was among Dow's customers who purchased these chemicals.  In November 2004, Dow declared a *force majeure* and reduced the amount of MDI and polyols it supplied to FSI.  FSI manufactures polyurethane foam systems and also resells some MDI and polyols to smaller customers.  Dow has a subsidiary that competes with FSI in the market for polyurethane foam systems.

In December 2003, FSI and Dow entered into a confidentiality agreement to allow Dow to inspect and test FSI's technology and trade secrets concerning a proprietary blowing agent used in the production of polyurethane foam.  Under this agreement, Dow would not use the information "for any reason or purpose other than to evaluate the proposed License" and would not use the confidential information in any way that would be detrimental to FSI.  FSI now claims that Dow told FSI's customers that it had gained access to FSI's technology, that FSI's product was inferior, and that they should not buy from FSI.

Dow competes with several other large firms in the markets for MDI and

polyols.  In the MDI market, Dow competes with Huntsman, Bayer, and BASF.  In the polyols market, Dow competes with two dozen companies.  Actual production of MDI has increased every year from 2000 through 2006; one of Dow's major competitors expanded its MDI production capacity by more than 40 percent from 2005 to 2006.  FSI has indicated that there is no elasticity of consumer demand for MDI and polyols.

In October 2005, FSI brought this lawsuit asserting a number of claims, including claims for monopolization and attempted monopolization in violation of § 2 of the Sherman Act arising out of Dow's *force majeure* declaration and solicitation of FSI's customers.  FSI asserts many facts regarding Dow's alleged anticompetitve conduct.  Immediately after FSI filed suit, Dow stopped selling MDI and polyols to FSI, but continued to sell MDI and polyols to others.   FSI amended its complaint after I dismissed several of the original claims, adding some new paragraphs to the general allegations section, adding a claim for breach of the confidentiality agreement, and adding a claim for refusal to deal under § 2 of the Sherman Act.  Dow has moved to dismiss the additions made by the amended complaint and for summary judgment on all of FSI's antitrust claims.

## Discussion

### 1.    Motion to Dismiss

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint.  When considering a 12(b)(6) motion, the factual allegations of a complaint are assumed true and are construed in favor of the plaintiff.  Neitzke v. Williams, 490 U.S. 319, 326 (1989).  To avoid dismissal for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although specific facts are not necessary, the plaintiff must allege facts sufficient to give fair notice of what the claim is and the grounds upon which it rests.  Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).

### a.    Paragraph 28.01

Dow first argues that paragraph 28.01 of the amended complaint is intended to state a claim for attempted monopolization under § 2 of the Sherman Act and that this claim should be dismissed because it does not contain allegations concerning market definition and dangerous probability of monopolization.  In response, FSI has indicated that the paragraph does not present any new claim, but simply pleads additional facts to support the claims previously presented in the lawsuit.  Dow requests that this Court confine FSI's antitrust claims to the product

market and geographic market definitions that FSI alleged in its complaint: the markets for MDI and polyols in North America. I believe FSI is limited to those market definitions and that FSI has not stated an additional claim in paragraph 28.01.

### b. The Breach of Contract Claim

Next, Dow seeks dismissal of the new breach of contract claim (Count IX), arguing that FSI has not pleaded a breach of the confidentiality agreement. Dow argues that the confidentiality agreement only required it not to disclose or "use" the information. FSI alleged that Dow represented to FSI customers (1) "that Dow had gained access to FSI's ecomate® technology," (2) "that Dow has performed testing" on the technology, and (3) that Dow found that technology to be "problematic and insufficient to meet the needs of FSI's customers and potential customers." Dow argues that this does not amount to "use" of confidential information. I disagree.

Under Eighth Circuit law, "when a contract uses plain and unequivocal language, it must be enforced as written." Sligo, Inc. v. Nevois, 84 F.3d 1014, 1019 (8th Cir. 1996) (citations omitted). Extrinsic evidence of the meaning of a contract term is only admissible when the contract is ambiguous. Baptist Health v. Smith, 477 F.3d 540, 543 (8th Cir. 2007). Under Missouri law, the word "use" is

not a technical word with a particular meaning in law, but is given its plain and ordinary meaning. Berry-Kofron Dental Lab. Co. v. Smith, 137 S.W.2d 452, 454 (Mo. 1940). The American Heritage Dictionary defines "use" as "to put into service or apply for a purpose; employ." American Heritage Dictionary of the English Language (4th ed. 2000). The Supreme Court has noted that the word "use" poses some interpretational difficulties because it "draws meaning from its context." Bailey v. United States, 516 U.S. 137, 143 (1995). In that criminal case involving "use" of a firearm, the Court noted that the "ordinary or natural" meaning of "use" included "to convert to one's service, to employ, to avail oneself of, and to carry out a purpose or action by means of." Id. at 145 (internal quotations omitted) (citing Smith v. United States, 508 U.S. 223, 228-29 (1993); Webster's New International Dictionary of English Language 2806 (2d ed 1949); and Black's Law Dictionary 1541 (6th ed. 1990)).

The term "use" can cover a broad range of actions. See Huthwaite v. Randstad Gen. Partner (US), LLC, 2006 WL 3065470, at *7 (N.D. Ill. Oct. 24, 2006). In that case, the court denied a motion to dismiss a breach of contract counterclaim where the allegation was that a party had improperly "used" confidential information to bring a copyright infringement action. The non-disclosure agreement was similar to that here, and included an agreement that the

party would not use the confidential information for any purpose not related to the parties' discussions.  The argument there was that "use" should be limited to the meaning from the Restatement of Unfair Competition, which limited the term to "marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret."  Id. at *6 (citing Restatement (Third) of Unfair Competition, § 40 Comment c (1995)).  The court denied the motion to dismiss, concluding that extrinsic evidence would be required to determine if the parties had intended that more limited definition of "use."

I do not believe that this more limited definition of "use" applies here, but even if it did Dow's alleged actions would fall within the definition.  FSI alleges that Dow employed the confidential information that it gained under the confidentiality agreement to solicit customers.  Even if Dow did not disclose the confidential information to the customers, it still used the information to compete with FSI, although it did not put FSI's technology into practice.  Because FSI has stated a claim based on the plain meaning of the words in the agreement, I will deny the motion to dismiss Count IX of the amended complaint.

## 2.  Motion for Summary Judgment

Dow has moved for partial summary judgment, arguing that it is entitled to judgment as a matter of law on FSI's claims of monopolization, refusal to deal, and attempted monopolization.  The standards for summary judgment are well settled.  In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Celotex</u>, 477 U.S. at 323.  There is no heightened standard for summary judgment in complex antitrust cases.  <u>Midwest Radio Co. v. Forum Publishing Co.</u>, 942 F.2d 1294, 1296 (8th Cir. 1991).

In order to establish a claim for monopolization under § 2 of the Sherman Act, FSI must establish (1) Dow's possession of monopoly power in the relevant market, and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. H.J., Inc. v. Int'l Tel. & Tel. Corp., 867 F.2d 1531, 1537 (8th Cir. 1989). Monopoly power is also a requirement for a "refusal to deal" claim. Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398, 407-8 (2004). To establish an attempted monopolization claim, FSI must prove: (1) specific intent to control prices or destroy competition, (2) predatory or anti-competitive conduct directed to accomplishing the unlawful purpose, and (3) a dangerous probability of success. H.J., Inc., 867 F.2d at 1537.

Dow argues that FSI cannot establish either monopoly power or a dangerous probability that Dow could obtain or exercise monopoly power. Much has been made by the parties about the definition of the relevant market in this case. FSI carries the burden of describing a well-defined relevant market, both geographically and by product, which Dow has monopolized or is attempting to monopolize. Id. In order to state its claims, FSI had to plead a relevant market in its complaint. Double D Spotting Service, Inc. v. Supervalu, Inc., 136 F.3d 554,

560 (8th Cir. 1998); <u>Razorback Ready Mix Concrete Co., Inc. v. Weaver</u>, 761 F.2d 484, 488 (8th Cir. 1985). The complaint must allege facts sufficient to give fair notice of what the claim is and the grounds upon which it rests. <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007). "[A] memorandum of law is not a proper vehicle for rewriting or amending the complaint." <u>Anderson v. Aset Corp.</u>, 329 F. Supp. 2d 380, 383 (W.D.N.Y. 2004).

FSI is essentially attempting to do just that: to amend its complaint through the multiple arguments it has made in its briefs and at oral argument. This moving target approach – were I to allow it – fails to give Dow proper notice of the claim against it. But the market allegations in the complaint are straightforward: "Dow and FSI compete on the sales side in the market for the chemicals MDI and polyols (the product markets) in North America (the geographic market) (collectively, the "Systems Market")." Complaint Par. 35. FSI's briefs refer to "the market," to "systems," and to "the systems market" as various things other than the way it defined these terms in its complaint. FSI's briefs argue that it has also described a market for polyurethane foam systems, which FSI also refers to as the "output" market, i.e., the market for one set of products that can be produced using MDI and polyols. While the term "systems market" might be a term of art that is used in the business to describe the rigid foam market or the polyurethane

foam market, that is not how the term is defined in the complaint, and FSI is limited to the definition it chose to give to the relevant market in its complaint. Therefore, for the purposes of this lawsuit, the "Systems Market" is the market for MDI and polyols in the United States. Nothing in my previous orders changed the complaint, and nothing in FSI's briefs can do so.

The issue in this case is whether Dow has monopoly power in the United States market for MDI and polyols or whether it had a dangerous probability of gaining such monopoly power. There is no other market to consider. Monopoly power is the power to control prices or exclude competition. United States v. E. I. du Pont de Nemours & Co., 351 U.S. 377, 391 (1956). Even though market share is not the sole factor in determining whether monopoly power exists, I can infer the existence or non-existence of monopoly power from the relative dominance of a defendant in the relevant market. See City of Mt. Pleasant, 838 F.2d at 279; see also PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 109 (2d Cir. 2002); Bailey v. Allgas, Inc., 284 F.3d 1237, 1249 (11th Cir. 2002); Tops Markets, Inc. v. Quality Markets, Inc., 142 F.3d 90, 98 (2d Cir. 1998). Under Eighth Circuit precedent, I may infer that monopoly power exists when a business entity has a ninety percent or greater market share and I may infer that there is no monopoly power when the market share is thirty-three percent or less. City of Mt. Pleasant, 838 F.2d at 279.

Where the defendant presents evidence that its market share is less than thirty-three percent and the plaintiff does not come forward with evidence to support a finding of control of the market, summary judgment is appropriate. See Assam Drug Co. v. Miller Brewing Co., 798 F.2d 311, 318 n. 18 (8th Cir. 1986). Dow has presented evidence that its market share is below thirty-three percent of the market for MDI or of the market for polyols. Although FSI denies that the market shares provided in the motion are accurate, it has not presented any evidence to support its argument.[1] Instead, it argues that only a percentage of the MDI and polyols are used for rigid polyurethane foam accounts. The percentage of MDI and polyols used for rigid polyurethane foam is irrelevant. Therefore, I may infer that Dow does not have monopoly power or a dangerous probability of obtaining monopoly power.

Market share evidence is not conclusive, and I should consider other factors in determining whether monopoly power or a dangerous probability of obtaining monopoly power exists. In assessing monopoly power, the question is whether Dow has the power to control prices and exclude competitors, and I should

_____

[1]FSI filed a Rule 56(f) motion seeking additional time to conduct discovery, but the discovery it sought related only to the polyurethane foam market (the so-called *output* market). The discovery it sought would not have provided the evidence it needed to survive summary judgment on the market actually alleged in its complaint.

consider the structural features of the relevant market including: the nature and existence of entry barriers, barriers to expansion, potential competition, scale economies, homogeneity of products, competitive performance of firms in the industry, and the conduct of Dow in the market. United States v. Columbia Steel Co., 334 U.S. 495, 528 (1948).

In considering the competitive performance of firms in the industry, both Dow and FSI agree that several other large firms compete with Dow in the markets for MDI and polyols. Huntsman, Bayer and BASF all compete with Dow for MDI sales in North America. In fact, Dow's market share of the market for MDI is smaller than any of these competitors. In the market for polyols, two dozen companies compete with Dow. Dow was the largest producer, but its largest competitor was close behind. Additionally, the combined share of Dow's six largest competitors was more than fifty percent of the market. Generally, where a defendant is not dominant in the relevant market, it cannot be a monopolist. See Belfiore v. New York Times Co., 654 F. Supp. 842, 847 (D. Conn. 1986). Additionally, "direct evidence of competitive pressure – demonstrated by a significant number of viable competitors" indicates a lack of market power. Ryko Mfg. Co. v. Eden Serv., 823 F.2d 1215, 1232 (8th Cir. 1987). The fact that Dow has large competitors as opposed to numerous very small competitors indicates

that Dow lacks monopoly power or the ability to obtain such power. <u>See</u> <u>In re</u>

<u>IBM Peripheral EDP Devices Antitrust Litig.</u>, 481 F. Supp. 965, 975 (D. Cal.

1979) (defendant's share is more likely to indicate monopoly power if the rest of

the market is widely distributed among many small competing suppliers than it

would be if the size of the competitors and the market share held by them

approached defendant's size and share).

With regard to barriers to expansion, Dow has presented undisputed

evidence that its competitors have expanded production of MDI in recent years.[2]

It is undisputed that actual production of MDI has increased every year from 2000

through 2005. One competitor expanded its MDI production capacity by more

than 40 percent from 2005 to 2006. "If there is undisputed evidence indicating

that competitors have expanded output in the recent past, or have the ability to

expand output in the future, summary disposition may be appropriate." <u>Rebel Oil</u>

<u>Co., Inc. v. Atlantic Richfield Co.</u>, 51 F.3d 1421, 1441 (9th Cir. 1995). This is

true regardless of whatever barriers to entry might exist. Prior expansion by

competitors would suggest that Dow lacked market power to control prices and so

---

[2] FSI contends that MDI producers are discouraged from increasing production and have not expanded output, but there is no evidence in the record to support this contention. In fact, the facts in the record indicate the opposite. Although prices might have risen, that does not indicate that production did not increase.

"it matters little that high barriers to entry exist to help that firm maintain monopoly power it could never achieve." Id. (quoting Indiana Grocery, Inc. v. Super Valu Stores, Inc., 864 F.2d 1409, 1415 (7th Cir. 1989)). Therefore, I do not need to consider what barriers to entry might exist.

Aside from barriers to entry, FSI notes that there is no elasticity of consumer demand for MDI and polyols. FSI argues that this factor indicates that Dow has monopoly power. Lack of elasticity alone cannot be determinative, or otherwise any company that produced a product with little or no elasticity of consumer demand would automatically be considered a monopolist regardless of market share. That is not the law. Certainly, the elasticity of consumer demand might be relevant if the supplier could be shown to dominate the market in some other way. Here, Dow has a relatively small share of the market, has several strong competitors, and those competitors have increased production. Under these circumstances, the lack of elasticity of consumer demand is far from persuasive evidence that Dow has monopoly power or a dangerous probability of obtaining monopoly power.

FSI also argues that Dow's conduct indicates monopoly power. This argument is based on a line of cases that was specifically overruled by the Supreme Court in Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447 (1993). In

Spectrum Sports, the Court stated that unfair or predatory conduct "may be sufficient to prove the necessary intent to monopolize, which is something more than an intent to compete vigorously, but demonstrating the dangerous probability of monopolization in an attempt case also requires inquiry into the relevant product and geographic market and the defendant's economic power in that market." Id. at 459. To prevail on a monopolization or attempted monopolization claim, the plaintiff must not only be able to establish intent, but must also be able to establish the defendant's economic power in the relevant market. Id. at 459. In the absence of a showing of market power, FSI's allegations concerning Dow's conduct are irrelevant. Those allegations go to the intent element, not to the monopoly power or dangerous probability element.

Further, the evidence that FSI was able to meet its requirements supports Dow's argument that it does not have monopoly power, even though this evidence is not conclusive. FSI has been able to purchase more MDI and polyols from other suppliers than it had been purchasing from Dow. FSI signed a requirements contract for polyols with Arch/Olin and a contract with Huntsman for more MDI than Dow had supplied to it during 2003-2006. Certainly, this indicates that Dow does not have the ability to control the market or exclude competition.

The undisputed evidence shows that Dow does not have monopoly power or

a dangerous probability of monopoly power in the market that FSI alleged in its complaint, and there are no other markets properly before the court. However, because FSI has argued that its market definition is broader – or somehow different – than appears on the face of its complaint, I will briefly address those additional arguments.

FSI argues, based in part on my liberal reading of its complaint when I denied the first motion to dismiss, that it has alleged that Dow is or is attempting to monopolize both the market for MDI and polyols and the market for polyurethane foam systems. FSI has referred to this as alleging a monopoly on both the input and the output markets. Although, as I discussed above, I do not believe that FSI has alleged this type of claim, even if it had Dow would still be entitled to summary judgment. That is because FSI would still have to establish that Dow has monopoly power over the input market – the market for MDI and polyols – in order to show attempted monopolization or monopolization of the output market.

FSI's input/output arguments attempt to allege an <u>Alcoa</u> type price squeeze. <u>See</u> <u>United States v. Aluminum Co.</u>, 148 F.2d 416 (2d Cir. 1945) (<u>Alcoa</u>). An <u>Alcoa</u> price squeeze occurs when a firm operates at two levels of an industry and its competitors at the second level are also its customers at the first level. The

price squeeze occurs when the monopolist's price at the input level is too high or its price at the output level is too low for the customer-competitors to cover costs and remain in business. Town of Concord v. Boston Edison Co., 915 F.2d 17, 18 (1st Cir. 1990). An Alcoa type price squeeze violates § 2 of the Sherman Act if "(1) the firm conducting the squeeze has monopoly power at the first industry level, (2) its price at this level is higher than a fair price, and (3) its price at the second level is so low that its competitors cannot match the price and still make a living profit." Town of Concord, 915 F.2d at 18 (internal quotation marks omitted) (citing Alcoa, 148 F.2d at 437-38); see also City of Kirkwood v. Union Elec. Co., 671 F.2d 1173, 1176 n. 4 (8th Cir. 1982). Therefore, even if this claim were properly alleged, FSI would be required to prove that Dow has a monopoly at the input level, i.e., in the market for MDI and polyols. Town of Concord, 915 F.2d at 29. As discussed above, the undisputed evidence shows that Dow does not have such power, so even if this squeeze theory were properly alleged, Dow would still be entitled to summary judgment.

FSI may now also be arguing that the relevant market for polyols is limited to Dow's polyols because Dow's polyols are somehow easier or cheaper to use, but if this is its argument, I must reject it as well. No such allegations are made in the complaint. The complaint makes no reference to the difference between

polyols of different producers, and Dow has not had any chance to challenge this "market" as too narrow. In any event, it would certainly be too narrow to withstand even a motion to dismiss. Simply because Dow may produce a better product than its competitors does not mean that Dow's polyols are their own relevant product market. City of Mt. Pleasant v. Assoc. Elec. Coop., 838 F.2d 268, 279 (8th Cir. 1988). In fact, the superiority of Dow's polyols may provide a rational explanation for higher prices or shortages.

FSI also argues that Dow and other North American MDI producers acted as a cartel to eliminate independent systems houses and that these producers "carved up" the output market and entered into "swap arrangements." This is not a claim under § 2 of the Sherman Act. A firm can only be liable for monopolization under § 2 of the Sherman Act where it can monopolize the relevant market while acting on its own. Copperweld Corp. v. Indep. Tube Corp., 467 U.S. 752, 767-68 (1984). FSI's opposition memorandum could arguably be read to allege a violation of § 1 of the Sherman Act, which prohibits concerted action by two or more parties in restraint of trade. Nothing in FSI's complaint or amended complaint, however, refers to § 1 of the Sherman Act, and FSI has not attempted to show any kind of agreement between the alleged cartel members. Certainly, if FSI is seeking to make a § 1 claim, its complaint – even if I

considered the allegations in the response memorandum – would not meet the pleading requirements for § 1 claims that were recently laid out by the Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007).

After a careful examination of all of the evidence before me, I conclude that FSI has not shown any genuine dispute of material fact. Dow does not have monopoly power in the markets for MDI and polyols – the only relevant market – and there is no dangerous probability of its obtaining such power. Dow is therefore entitled to summary judgment on all of FSI's antitrust claims.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Dow Chemical Co.'s motion to dismiss [#38] is denied as to Count IX (breach of confidentiality agreement) and is otherwise granted.

**IT IS FURTHER ORDERED** that Dow's motion for partial summary judgment [#42] is granted, and Foam Supplies, Inc.'s antitrust claims (Counts I, II, and X) are dismissed with prejudice.

**IT IS FURTHER ORDERED** that FSI's motions to compel [#84] is denied for the reasons stated by Dow, and its motion for protective order [#90] is denied as moot.

**IT IS FURTHER ORDERED** that Dow's motion for leave to file surreply

[#92] is granted.

**IT IS FURTHER ORDERED** that FSI's motion for leave to amend the complaint [#85] is denied for the reasons set out in Dow's opposition.

**IT IS FINALLY ORDERED** that the parties shall notify the undersigned, jointly and in writing, no later than **December 4, 2007**, of any modifications they believe are necessary to the expert witness or other discovery deadlines in this case. I would like to retain the deadlines for filing dispositive motions and the trial date, but I understand that my delay in ruling on the motion for summary judgment may require modification of some of the other deadlines.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 27th day of November, 2007.