UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FOAM SUPPLIES, INC.,              )
                                  )
        Plaintiff,                )
                                  )
    vs.                           )        Case No. 4:05CV1772 CDP
                                  )
THE DOW CHEMICAL                  )
COMPANY,                          )
                                  )
        Defendant.                )

## <u>MEMORANDUM OPINION</u>

Plaintiff Foam Supplies, Inc. (FSI) was both a customer and a competitor of

defendant The Dow Chemical Company.  FSI brought this suit because Dow failed

to sell it quantities of methyl diphenyl diisocyanate that FSI contends were

required by a contract.  The remaining claims are breach of sales contract, tortious

interference with business expectancy, fraudulent misrepresentation, and breach of

non-disclosure agreement.  Dow seeks summary judgment on the remaining

claims.  Because the case is set for trial in three weeks, I entered an order ruling on

these motions last week, even though I was not yet ready to issue an opinion

explaining the reasons for my rulings.  This opinion contains those reasons.

Dow is entitled to judgment as a matter of law on the fraud and breach of

non-disclosure agreement claims, as FSI's proof of several of the essential

elements of these claims is lacking. FSI's breach of contract claim, even if proved at trial, could not support its claim for lost profits, because the contract contains a valid limitation of liability provision excluding consequential damages. Genuine disputes remain on all other elements of the breach of contract claim, which survives because FSI has other claims of damages. Genuine disputes also remain on the claim for tortious interference with FSI's legitimate expectancy in its business with one customer, Philips Products.

## Background

Dow and FSI are both involved in the polyurethane foam systems business. Dow sells methyl diphenyl diisocyanate (MDI), a chemical compound used to produce polyurethane foam products. In addition to selling MDI to plaintiff and to other outside customers, Dow also sells MDI to its own subsidiary that competes with FSI.

In August 2004, Dow and FSI were involved in negotiations for an MDI requirements contract for the years 2004 and 2005. Around August 15, 2004, Dow's sales representative, Les King, emailed FSI a requirements contract for FSI's signature. Under the signature blanks the form stated: "NOTE: This offer expires if Dow doesn't receive a signed acceptance within 30 days after receipt by customer." FSI signed and returned the contract the very next day, but Dow never

returned a copy to FSI with *Dow's* signature.

FSI realized it had not received a signed copy back only later, when Dow stopped supplying it with the full amount called for by the contract. Not long after that, Dow declared *force majeure* as a result of an equipment breakdown at one of its plants. Dow informed FSI that it would be unable to meet FSI's needs and that it was attempting to allocate MDI among its customers in a fair and equitable manner. Dow did not provide the quantities of MDI covered by the contract, and FSI claims that its sales and profits were adversely affected.

Earlier, in December 2003, Dow and FSI had entered into a confidentiality and non-disclosure agreement concerning FSI's ecomate® technology, as part of negotiations over a separate business deal. Dow inspected and tested FSI's technology under the protections of the confidentiality agreement. FSI asks the court to infer that Dow breached the non-disclosure agreement; FSI seeks this inference as a discovery sanction because Dow only recently disclosed that it had obtained an additional sample of FSI's product from another source, which it also tested.

## Discussion

Dow has moved for summary judgment on all of FSI's remaining claims. In determining whether summary judgment should issue, the Court views the facts

and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

## Breach of Contract (Count III)

In order to prove its breach of contract claim, FSI must establish: (1) the elements of a valid contract, (2) the terms of the contract, (3) that Dow breached the terms of the contract, and (5) that the breach caused FSI's injury. *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003) (interpreting Michigan law).[1] FSI contends that Dow breached the contract by failing to deliver the quantities of MDI covered by the contract. It seeks lost profits, refunds of a surcharge, and rebates. Dow argues

---

[1]The contract specifically states that Michigan law applies. In determining which law to apply in this case, I am bound by Missouri's choice of law principles. *Brown v. Home Ins. Co.*, 176 F.3d 1102, 1105 (8th Cir. 1999). Generally, Missouri courts will honor the parties' choice of law provision so long as the law is not contrary to a fundamental policy of Missouri. *Block Fin. Corp. v. Am. Online, Inc.*, 148 S.W.3d 878, 884 (Mo. Ct. App. 2004). Therefore, I will apply Michigan's law to the breach of contract claim. Michigan and Missouri have both adopted the UCC, however, so the differences are slight.

that the lost profits claim is barred by a limitation clause in the contract, that the claimed lost profits were not caused by any breach, that the surcharge damages are unrecoverable because FSI passed them on to its customers, and that no contract existed. I conclude that the limitation of liability clause prohibits FSI's claims for lost profits, but factual disputes remain on all other issues.

1.    <u>Did a Contract Exist</u>?

Dow argues that FSI cannot prove that a contract existed because Dow never signed the contract. FSI has provided sufficient evidence to withstand summary judgment on this claim. FSI has evidence that Dow made an offer by sending the contract, and that FSI accepted the offer by signing it and returning it.

Whether a contract was formed is an issue of law for me to decide, but underlying factual disputes are to be resolved by the jury. *Kloian v. Domino's Pizza L.L.C.*, 733 N.W.2d 766, 770 (Mich. Ct. App. 2006).[2] Under Michigan law, "before a contract can be completed, there must be an offer and acceptance. Unless an acceptance is unambiguous and in strict conformance with the offer, no contract has been formed." *Kloian*, 733 N.W.2d at 770.

---

[2]If the contract was not valid, then the choice of law provision is not effective. *See Citibank (South Dakota), N.A. v. Wilson*, 160 S.W.3d 810, 812-13 (Mo. Ct. App. 2005). Still, under Missouri law, there is only a conflict of law where the interests of two or more states cannot be reconciled. Because the contract formation requirements of all of the states with contacts to the contract formation issue are similar, I may apply the law of either Michigan or Missouri. *Brown v. Home Ins. Co.*, 176 F.3d at 1105.

The August 15, 2004 email and attachment can be seen as an offer from Dow to FSI. FSI signed and sent the document back the next day, which can be viewed as acceptance. This evidence is sufficient to withstand a motion for summary judgment. *See McKain v. Moore*, 431 N.W.2d 470, 475 (Mich. Ct. App. 1988).

Contrary to Dow's arguments, neither *PCS Sales (USA), Inc. v. Nitrochem Distrib. Ltd.*, 2004 WL 944541 (S.D.N.Y. May 3, 2004) nor *Herm Hughes & Sons, Inc. v. Quintek*, 834 P.2d 582 (Ut. Ct. App. 1992), are persuasive. In *PCS Sales* the offeree, Nitrochem, did not accept PCS's offered contract immediately, but instead responded with objections to certain provisions, and only after extensive negotiations did Nitrochem "resurrect" the offer, countersign it, and mail it back. *PCS Sales*, 2004 WL 944541, at *3. In *Quintek* the offeree did not accept the offer within the ten-day limit provided by the offer. Instead, it later proposed a different contract, and there were further negotiations between the parties. 834 P.2d at 583. It is hardly surprising that neither court found a contract to have been formed.

Dow argues that the parties' conduct shows that no contract was formed, but this is a disputed factual question. Under Michigan law, all that is necessary to show a meeting of the minds is "conduct by both parties which recognizes the

existence of such a contract." Mich. Comp. Laws § 440.2204(1); *see also Detroit Radiant Prod. Co. v. BSH Home Appliances Corp.*, 473 F.3d 623, 630 (6th Cir. 2007). Most of the evidence regarding the parties' conduct can be viewed in more than one way, precluding summary judgment.

Finally, there is evidence from which a jury could find that King had authority to make a contract. Under Michigan law, "a principal is bound by an agent's actions within the agent's actual or apparent authority." *James v. Alberts*, 626 N.W.2d 158, 160 (Mich. 2001). King acted with apparent authority if he was acting within the scope of his usual employment or if he was held out to the public, or FSI, as having competent authority. *Dick Loehr's, Inc. v. Sec'y of State*, 446 N.W.2d 624, 626 (Mich. Ct. App. 1989). King had previously negotiated contracts on behalf of Dow, and the previous contracts had been honored by Dow.

## 2. Can FSI Prove Recoverable Damages?

Dow next argues that FSI cannot prove recoverable damages. According to Dow's motion, FSI claims three categories of damages: (1) lost profits, (2) benzene surcharges, and (3) rebates. Dow's motion addresses the lost profits and benzene surcharges, but never addresses the rebates,[3] which means that summary

---

[3]The Rebates clause in Addendum A of the contract provides that FSI would receive two free tank trunks of PAPI 27, a Dow plastics product, if FSI purchased 8 MM pounds of MDI in 2004 or 9 MM pounds of MDI in 2005. FSI's damage summary (exh. 82 to Dow's motion)

judgment must be denied on that claim, at least.

I understand the benzene surcharge claim to be that Dow added unauthorized surcharges to the price charged for the MDI that was shipped, so FSI seeks to recover what it believed it overpaid.[4]  Dow asserts that this claim is barred by the "voluntary payment doctrine," and, besides that, Dow says, FSI did not actually lose any money because it passed the surcharges along to its customers. An issue of fact remains regarding whether FSI passed along the entire cost of the surcharges to its customers.  Additionally, a question of fact exists with regard to whether FSI paid the surcharges under duress.  FSI has presented evidence that Dow would not have supplied any MDI unless FSI paid the benzene surcharge. Threatening to violate the terms of a contract may constitute duress.  Richard A. Lord, Willison on Contracts § 71.13 (4th ed. 2007); *see also Austin Inst., Inc. v. Loral Corp.*, 272 N.E.2d 533, 535 (N.Y. 1971).

3.    <u>Can FSI recover lost profits?</u>

On its face, the limitation of liabilities clause bars FSI's claim for lost profits.  Paragraph 8 of the contract is headed "LIMITATION OF LIABILITIES"

---

claims $243,000 for this item, which it identifies as "two truck loads" for each year.  FSI's theory appears to be that if Dow had not breached the contract, it would have bought the quantities necessary to qualify for the rebates, so this is a direct loss caused by Dow's non-delivery.

[4]This alleges a different breach of the contract, but Count III's broad wording encompasses it.

and provides, in all caps:

> Neither party will be liable to the other for any consequential, punitive, special, exemplary or incidental damages. Customer's exclusive remedy and Dow's total liability for claims regarding a product's failure to meet sales specification, quality or performance (including breach of warranty, negligence and strict liability) is limited to customer having the option of replacement or repayment of the purchase price paid for the products which are subject of the claim.

FSI argues that: (a) Dow cannot rely on the clause because it anticipatorily repudiated the contract in bad faith; (b) the limitation on liability clause does not apply to FSI's claims because it covers only claims relating to nonconforming or defective goods and because lost profits are not consequential damages; and (c) the clause "fails of its essential purpose" because it denies FSI any meaningful remedy.

### (a) Anticipatory Repudiation in Bad Faith

FSI is correct that an anticipatory breach affects the duties of the parties, but only to the extent that FSI did not have to perform its duties under the contract before suing Dow. As a result of Dow's statement that it would not deliver the contracted-for amount, FSI did not need to pay for the undelivered MDI before suing Dow. But Dow's anticipatory breach does not give FSI rights which it did not otherwise have under the contract. Michigan's UCC provides the normal

buyer's damages of the difference between the contract price and market price. Mich. Comp. Laws § 440.2713.[5]  Consequential damages can also be recovered, under proper circumstances.  Mich. Comp. Laws § 440.2715.  But whether the breach is anticipatory or not does not change the measure of damages:  "The measure of damages is the same whether the defendant's breach is or is not anticipatory. . . . Damages for an anticipatory repudiation are to represent full compensation for the loss caused by depriving the plaintiff of the benefit of the bargain."  *Stanton v. Dachille*, 463 N.W.2d 479, 482 (Mich. Ct. App. 1990).  FSI's arguments about anticipatory breach are not supported by the law.

FSI's argument that the clause does not apply because the breach was in bad faith asks this Court to adopt a reading of the UCC that has never been adopted in Michigan or Missouri.  FSI does not argue that Dow entered into the contract in bad faith or that it was unconscionable, but instead argues that the fact that Dow intentionally breached the contract makes the limitation on liability clause void. This argument, if accepted, would render almost all limitations clauses invalid, as most contract breaches are intentional.  While some courts have adopted the argument – mostly in warranty cases – Michigan has not, and I will not adopt it

---

[5]This is the same as Mo. Rev. Stat. § 400.2-713; the equivalent of all the Michigan UCC sections cited here are also found in the Missouri UCC.

here.

The validity of a contract is determined based on the facts at the time of
contract formation. *See Lenawee County Gas & Elec. Co. v. City of Adrain*, 176
N.W. 590, 595 (Mich. 1920); *see also Jones v. Mgmt. and Computer Serv., Inc.*,
976 F.2d 857, 860 (3d Cir. 1992) ("It is a deeply imbedded general principle of
contract law that the validity of a contract is to be determined as of the time it is
made."). FSI does not argue that Dow entered into the contract in bad faith with
no intent to perform. Instead, FSI argues that Dow breached the contract in bad
faith. Dow's subjective intent when it breached the contract has no bearing on
whether the limitation on liability clause is valid. *Cf. Phillips Machinery Co. v.
LeBlond, Inc.*, 494 F. Supp. 318, 324-25 (N.D. Ok. 1980) (good faith of defendant
in terminating contract immaterial because contractual limitations of damages are
valid unless unconscionable).

*(b)     Does the clause apply to FSI's claims?*

If a contract is unambiguous, I must interpret the contract based on the
words used by the parties, and I cannot consider parol evidence to find that the
parties had a different intent. *Burkhardt v. Bailey*, 680 N.W.2d 453, 464 (Mich.
Ct. App. 2004). In interpreting the limitation of liabilities clause, I must read the
contract as a whole, "giving harmonious effect, if possible, to each word and

phrase." *Wilkie v. Auto-Owners Ins. Co*, 664 N.W.2d 776, 782 n.11 (Mich. 2003). The determination of whether a contract is ambiguous is a question of law. *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 463 (Mich. 2003).

This clause is not ambiguous. FSI argues that reasonable people could interpret the clause to apply only to "claims regarding a product's failure to meet sales specification, quality or performance," which is the language in the second sentence. But FSI's interpretation renders the first sentence meaningless. That sentence states that "*neither* party" will be liable for consequential damages. That phrase would not make any sense if the entire paragraph only covered warranty-type claims, because it could never apply to the seller's remedies. The one case FSI relies on for this argument, *PC COM, Inc. v. Proteon, Inc.*, 906 F.Supp. 894 (S.D.N.Y. 1995), interpreted a clause excluding lost profits, but the contract in that case did not have a separate sentence referring to warranty claims. The New York court reasoned that Massachusetts cases had only upheld lost profit exclusions in warranty situations. *PC COM* did not involve a contract that had a specific limitation for warranty claims and another, broader clause limiting the remedies of both parties, such as is present here. FSI has not cited any Michigan cases that would support its argument, and its own executives' affidavits about what they "always thought" the limitation meant do not change the result. I must reject FSI's

attempt to create an ambiguity where none exists.

FSI's argument that lost profits are not consequential damages is also not supported by the law. Michigan's UCC, like others, allows incidental and consequential damages as buyer's remedies, Mich. Comp. Laws § 440.2713, and defines consequential damages in the normal way to include: "(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." Mich. Comp. Laws § 440. 2715(2).

FSI relies on cases holding that lost profits are not always treated as consequential damages. *See Computrol, Inc. v. Newtrend, L.P.*, 203 F.3d 1064, 1071 n. 5 (8th Cir. 2000); *ViaStar Energy , LLC v. Motorola, Inc.*, 2006 WL 3075864 (S. D. Ind. 2006). FSI cites no Michigan cases, however, and Michigan courts have routinely considered lost profits to be consequential damages. *See Sullivan Ind., Inc. v. Double Seal Glass Co., Inc.*, 480 N.W.2d 623, 631 (Mich. Ct. App. 1991) ("consequential damages do not arise within the scope of the immediate buyer-seller transaction, but rather stem from losses incurred by the nonbreaching party in its dealings, often with third parties, which were a proximate result of the breach, and which were reasonably foreseeable by the breaching party at the time of contracting. . . . Examples of consequential damages

include lost profits.") (citing cases); *Lawrence v. Will Darrah & Assocs., Inc.*, 516 N.W.2d 43, 47 (Mich. 1994). *See also Venture Industries Corp. v. Himont U.S.A.*, 106 Fed. Appx. 943, 944-45 (interpreting Mich. 440.2715 consequential damages to include lost profits to buyer for seller's delivery of defective goods) (6th Cir. 2004) (unreported). Michigan courts routinely treat claims for lost profits as consequential damages, and it is appropriate that they be so treated here. FSI's claim for lost profits is exactly as described by the court in *Sullivan,* and the limitation clause covers the claim.

(c)     *Failure of essential purpose*

FSI's final argument is that the limitation on liability clause "fails of its essential purpose." Michigan's UCC allows parties the normal right to modify or limit remedies for both parties. Mich. Comp. Laws § 440.2719. Limits on consequential damages are allowable so long as they are not unconscionable, § 440.2719(b)(3), and FSI does not argue that this was an unconscionable contract. However, if "circumstances cause an exclusive or limited remedy to fail of its essential purpose," the limitation may be unavailable. § 440.2719(b)(2). A limitation on liability clause fails of its essential purpose when unanticipated circumstances preclude the seller from providing the buyer with the remedy to which the parties agreed or where the limitation deprives either party of the value

of the bargain. *See Computer Network, Inc. v. AM Gen. Corp.*, 696 N.W.2d 49, 54 (Mich. Ct. App. 2005). One Michigan case (relied on by FSI) distinguishes this from a claim that the provision is unconscionable: "The exclusive remedy provision is not concerned with arrangements which were oppressive at their inception, but rather with the application of an agreement to *novel circumstances not contemplated* by the parties." *Viking Yacht Co. v. Composites One LLC*, No. 05-538(JEI), 2007 WL 2746713, at * 5 (emphasis added) (D.N.J. September 18, 2007).

FSI argues that because of the limitation language referring to replacement of defective products, it had no remedy and so the clause fails of its essential purpose. This argument ignores the remedies that were available to FSI. FSI could have sought specific performance from Dow or damages for the cost of cover. FSI had available to it the normal buyer's remedies for which it contracted. I see no reason why the circumstances in this case are somehow special or unanticipated.

The Michigan cases cited by FSI in support of its argument that the clause failed of its essential purpose involve warranties and "exclusive repair" remedies. Where the repair under the warranty was untimely or incomplete, courts have found a failure of essential purpose. *See Sullivan Indus., Inc. v. Double Seal Glass*

*Co., Inc.*, 480 N.W.2d at 356; *Kelynack v. Yamaha Motor Corp., USA*, 394

N.W.2d 17, 21 (Mich. Ct. App. 1986); *Fargo Mach. & Tool Co. v. Kearney &*

*Trecker Corp.*, 428 F. Supp. 364, 382 (E.D. Mich. 1977); *Koehring Co. v. A.P.I.,*

*Inc.*, 369 F. Supp. 882, 885-90 (E.D. Mich. 1974).  But in a case where lost profits

are sought for non-delivery, the normal remedies of cost of cover or specific

performance still exist.  If this limitation on liability clause fails of its essential

purpose, I have difficulty imagining a situation where a clause restricting

consequential damages for a breach of contract could ever be found to be valid.

As a result, I find that FSI cannot recover its lost profit damages in this breach of

contract action because those damages are excluded by the limitation of liabilities

clause.

In conclusion, I will deny Dow's motion for summary judgment on the

breach of contract claim, because questions of fact remain on everything except

the lost profits claim.  As a matter of law, FSI may not recover lost profits because

it agreed, when it entered the contract, to exclude that type of damages.

### Tortious Interference (Count V)

FSI's tortious interference claim concerns FSI's relationship with its

customer, Philips Products.[6]  FSI's theory is that Dow breached its requirements

contract with FSI so that Dow, through its subsidiary NASH, could gain an unfair

competitive advantage with FSI's customer Philips.  Under Missouri law, a claim

of tortious interference with a contract or business expectancy requires proof of:

"(1) a contract or business expectancy; (2) defendant's knowledge of the contract

or relationship, (3) a breach induced or caused by defendant's intentional

interference; (4) absence of justification; and (5) damages."  *Nazeri v. Missouri*

*Valley College*, 860 S.W.2d 303, 316 (Mo. 1993).[7]  Dow argues that FSI did not

have a valid business expectancy and that it did not act with an absence of

justification.

I am not persuaded by Dow's argument that FSI cannot show a legitimate

business expectancy.  A claim for interference requires more than "a mere hope of

---

[6]FSI's complaint specifically alleged tortious interference with its relationship with Philips; it did not mention any other customers.  In November of 2007 I denied FSI's motion to amend to add claims of interference with two other customers, CHI and Miraco.  FSI continues to seek to add them to the case, claiming that my earlier denial was before the necessary discovery. But FSI made that same argument before.  I denied the amendment because it was untimely, the delay would unfairly prejudice Dow, and FSI had not shown good cause for its delay.  This case, with its very specific allegation about Philips, had been pending two years when FSI sought to amend. FSI had already amended the complaint on June 1, 2007, no discovery between June and October justified the delay, and at the time of my ruling the case was set for trial in June 2008.

[7]The elements of this tort are essentially the same under Michigan law.  *Mino v. Clio School Dist.*, 661 N.W.2d 586, 597 (Mich. Ct. App. 2003).  Because there is no conflict between Missouri law and Michigan law on this issue and because the parties cite to Missouri law in their briefs, I will apply Missouri law to this claim.

establishing a business relationship." *Misischia v. St. John's Mercy Med. Ctr.*, 30 S.W.3d 848, 863 (Mo. Ct. App. 2000). Instead, the business expectancy must be reasonable. *Londoff v. Walnut St. Sec., Inc.*, 209 S.W.3d 3, 9 (Mo. Ct. App. 2006). Generally, the issue of whether a business expectancy is reasonable or not is a question of fact for the jury. *Id.*

Dow argues that no valid business expectancy can exist when a contract is terminable at will, citing *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247 (Mo. 2006). *Stehno* involved an employee of a temporary agency who had failed to tell the temp agency that his former employer – to whom the temp agency assigned him – had refused to re-employ him. But this is not an employment case, and FSI has evidence that Philips had purchased substantial amounts of polyurethane foam chemicals from FSI for many years. Many tortious interference cases have recognized a party's legitimate business expectancy in customer relationships, even in the absence of a signed contract. *See, e.g., Conoco Inc. v. Inman Oil Co., Inc.*, 774 F.2d 895, 907 (8th Cir. 1985) (finding that a 20-year customer relationship was a protected business expectancy even though the customer offered its business to all bidders every year). As a result, a jury could find that FSI had a reasonable and valid business expectancy with Philips.

Genuine disputes of material fact also remain with regard to the absence of

justification element.   I recognize that ordinary competitive conduct is not wrongful or improper, *Conoco*, 774 F.2d at 907, and that "a deliberate breach of contract, even where employed to secure economic advantage, is not, by itself, an 'improper means,'" *Leigh Furniture and Carpet Co. v. Isom*, 657 P.2d 293, 309 (Utah 1982); *see also Conoco*, 774 F.2d at 907-09 (finding no wrongful means even though the court found that the actions were a breach of contract); *Harsha v. State Sav. Bank*, 346 N.W.2d 791, 799 (Iowa 1984).  Still, a breach of contract can constitute a wrongful means if the breach was for the purpose of "injuring or destroying prospective business relationships." *Harsha*, 346 N.W.2d at 799; *see also Leigh Furniture*, 657 P.2d at 309-11 (noting that "a breach of contract committed for the immediate purpose of injuring the other contracting party is an improper means").

FSI has presented evidence that Dow breached the requirements contract in order to reduce FSI's ability to compete with Dow for business relationships, and there is evidence from which a jury could conclude that Dow employed wrongful means.  I will therefore deny the motion for summary judgment on this claim.

## Fraudulent Misrepresentation Claim (Count VI)

FSI's fraudulent misrepresentation claim arises out of Dow's declaration of *force majeure* in November 2004.  Dow sent a letter which stated that an

equipment failure at its LaPorte, Texas plant resulted in an unplanned shutdown, causing Dow to be "unable to supply you with the quantities of MDI that you ordered or have forecasted." FSI's complaint sets out two statements in the letter that it contends were false: (1) Dow's statement that it was suffering a shortage of MDI; and (2) Dow's statement that it was "using all commercially reasonable means to address this situation in a safe, fair and reasonable manner . . . We are now in the process of determining the allocation of available MDI." FSI has presented testimony that when it received this letter it "pulled back" its sales force and instructed them not to attempt to gain new business. It then argues that it lost profits because it failed to make sales to Igloo Products Corporation.[8] FSI claimed this same loss as part of its lost profits damages on the breach of contract claim.

To establish a claim of fraudulent misrepresentation under Missouri law, FSI must establish: (1) a false, material representation; (2) Dow's knowledge of its falsity or its ignorance of its truth; (3) Dow's intent that the representation should be acted upon by FSI in the manner reasonably contemplated; (4) FSI's reliance on the statement's truth; (6) FSI's right to rely thereon; and (7) FSI's consequent and proximately caused injury. *Harris v. Smith*, 250 S.W.3d 804, 808 (Mo. Ct. App.

---

[8]FSI's opposition brief specifically states that FSI "does *not* contend that Dow's fraudulent misrepresentation caused the loss of business from Phillips, CHI, or Miraco." (emphasis in original).

2008).[9]

First, I agree with Dow that the statement that it would be reasonable in its allocations cannot be a basis for a claim of fraud. It is simply too vague and is susceptible of numerous meanings. *Cf. Woods v. Wills*, 400 F. Supp. 1145 (E. D. Mo. 2005) (representation that person would be "treated humanely" and "receive necessary medical care" not basis for fraud claim); *Arnold v. Erkmann*, 934 S.W.2d 621, 626-27 (Mo. Ct. App. 1996) (prediction of future success cannot be subject of fraud action); *Titan Constr. Co. v. Mark Twain Kansas City Bank*, 887 S.W.2d 454, 459 (Mo. Ct. App. 1994) (statement that party would negotiate in good faith cannot support fraud claim).

Second, I agree with Dow that FSI cannot show reasonable reliance or proximate causation with regard to the statement that Dow was suffering a shortage. FSI argues in its brief that this claim does *not* relate to the breach of

---

[9]There is no conflict between Michigan law and Missouri law on this issue: "To establish a claim of fraudulent misrepresentation, plaintiff was required to prove that: (1) defendant made a material representation; (2) the representation was false; (3) defendant knew, or should have known, that the representation was false when making it; (4) defendant made the representation with the intent that plaintiff rely on it; (5) and plaintiff acted on the representation, incurring damages as a result." *Foreman v. Foreman,* 701 N.W.2d 167, 175 (Mich. Ct. App. 2005) (citations omitted). As noted above, under Missouri law, there is only a conflict of law where the interest of two or more states cannot be reconciled, and because the elements of fraudulent misrepresentation are nearly identical in Missouri and Michigan, I may apply Missouri law. *Brown v. Home Ins. Co.*, 176 F.3d at 1105.

contract claim.[10]  It makes this argument in order to avoid the economic loss

doctrine, but I am not deciding whether that doctrine applies here.  If the claim

does not relate to the contract, however, any reliance by FSI was not reasonable

and did not cause FSI's loss of the Igloo contract.  In other words, FSI is claiming

that a supplier with whom it had no contractual arrangement *lied* to it about the

supplier's ability to provide an infinite amount of MDI, and that because of the lie,

FSI made a smaller bid to a new customer than it otherwise would have made, and

that because it could not bid on a larger portion of the customer's business, it

failed to obtain the business at all.  Assuming this is the argument, and viewing the

evidence in the light most favorable to FSI, FSI cannot prove either reasonable

reliance or proximate cause.

FSI had other suppliers of MDI, and the undisputed evidence shows that FSI

obtained commitments from other suppliers after it received Dow's letter.  The

undisputed evidence shows that FSI was in regular contact with many suppliers,

and that it knew the state of the market.  Yet it claims here that because Dow

mislead it into thinking *Dow* could not supply some unspecified and uncontracted-

---

[10]FSI's President provided an affidavit that states: "I sincerely believe that had Dow not stated to FSI in November 2004 that it was unable to supply FSI *with its MDI commitments and had Dow not advised FSI in late January 2005 that it had repudiated the contract,* FSI would have been successful quoting a 14 million pound requirement contract with Igloo."  This evidence is wholly inconsistent with FSI's argument that the fraud claim is separate from the contract claim.

for amount, it decided it could not bid on work from Igloo that it wanted. No jury could find this to be reasonable reliance. FSI's arguments may have proved too much – by claiming that this does not relate to the contract, FSI has disproved that its alleged reliance on the statement was reasonable.

Additionally, the undisputed evidence shows that the proximate cause element is lacking. "It must appear in an appreciable sense that the damage flowed from the fraud as the proximate and not the remote cause, and the damage must be such as is the natural and probable consequence of the fraud." *Herberer v. Shell Oil Co.*, 744 S.W.2d 441, 443-44 (Mo. 1988). Additionally, "there can be no recovery where there is uncertainty that the harm resulted from the conduct alleged to be tortious . . . . [T]ortious conduct is not a substantial factor in the production of harm to another if the harm would have eventuated even if the conduct had not been tortious." *Rigby Corp. v. Boatmen's Bank and Trust Co*. 713 S.W.2d 517, 542-43 (Mo. Ct. App. 1986) (internal citations omitted).

FSI argues that it did not attempt to get as much of the Igloo business as a result of Dow's statement that it was unable to supply FSI with its requirements. For proximate causation to exist, then, FSI would have to show that absent the false statement, it would have obtained the Igloo business. That presumes something that the evidence shows is false however – that absent the lie about

*force majure*, Dow would have sold as much MDI to FSI as it might have wanted. The undisputed evidence shows that FSI would have lost the Igloo business whether Dow declared *force majure* or whether Dow simply decided not to sell to FSI. Any loss was caused by FSI's lack of product to sell, not by Dow's *lying* about its own supply of MDI. FSI has no evidence from which a reasonable juror could conclude that the representations in the letter, even if false, caused any damages. Dow is therefore entitled to judgment as a matter of law on the fraud claim.

## Breach of Non-Disclosure Agreement (Count IX)

FSI's final claim is that Dow breached the 2003 confidentiality and non-disclosure agreement, which was entered into when the parties were considering a potential license of FSI's ecomate® technology. Under the protections of that agreement, FSI provided Dow with physical samples of its product and proprietary information about the technology. FSI alleges that Dow tested the samples and breached the agreement by communicating the test results to sales representatives, who then disclosed the information to potential customers to deter those customers from using FSI's product. This claim fails as a matter of law because there is no evidence to support FSI's claim that anyone at Dow provided results from these tests to sales agents. It also fails because FSI cannot show that it suffered any

damages as a result of the supposed breach of contract.

FSI alleges that Dow revealed information regarding  ecomate® to AMS and Royal, two companies FSI was courting as potential customers.  There is evidence to show that one of the customers had planned on buying from FSI but changed its mind after talking to people from Dow, but there is no evidence about why this happened or what the Dow person said to the customer.  FSI elected not to seek any discovery from AMS or Royal.  Instead, FSI now seeks to have me infer, as a discovery sanction, that Dow revealed information about  ecomate® to its salespeople in violation of the non-disclosure agreement and that those salespeople  revealed this information to AMS and Royal.  It then seeks to have me infer that the purchasing decisions of AMS and Royal were influenced by this information.  FSI's argument about discovery abuse is not sufficient to support inference upon inference, and does not make up for this lack of evidence.  I will not infer that a claim exists simply because Dow did not reveal information about something only marginally related to this dispute.[11]

---

[11]I am not even sure that a discovery violation occurred, and I will not grant sanctions.  It is undisputed that until very recently, Dow did not reveal to FSI that it had received a sample of ecomate® from a customer, which it tested.  But FSI never made a proper discovery request that would have required this disclosure, and I do not believe Dow was required to produce the information in the absence of a request. FSI did ask about it at a deposition, but no formal document request was filed.  FSI did not add this claim until June of 2007.  Even then there was no reason for Dow to believe it must produce evidence regarding its receipt of a sample from others, given the allegations of the claim.  The information would have been discoverable if

Additionally, FSI was not damaged by any alleged breach. It argues that even though it suffered no damages, it should recover its attorneys fees for this lawsuit because the non-disclosure agreement has an attorneys fees provision. That provision states: "In the event it becomes necessary for either party to institute a suit at law or in equity for the purpose of enforcing any of the provisions of this Agreement; the prevailing party, as determined by the court, shall be entitled to recover for the other party its reasonable attorneys' fees plus court costs and expenses." This clause would only apply if FSI could show that the contract had been breached to its detriment – an attorneys fee provision such as this does not create a free-standing claim in the absence of proof of the elements of a breach of contract claim. FSI cannot prove the element of damages any more than it can prove the required breach. Dow is entitled to summary judgment on the claim for breach of the non-disclosure agreement in Count IX.

## Conclusion

The undisputed facts show that Dow is entitled to summary judgment on FSI's claims for fraudulent misrepresentation (Court VI) and breach of the non-

---

properly requested, and in a normal case I would have expected counsel to voluntarily produce such evidence when asked, even without a formal request, but a failure to do so is not sanctionable. On this set of facts, I must reject FSI's request that I impose sanctions as a way to save its otherwise evidence-less claim.

disclosure agreement (Count IX). Factual disputes exists with regard to FSI's breach of contract claim (Count III) and FSI's tortious interference claim (Count V), and therefore, I have denied Dow's motion for summary judgment on those claims. Still, those claims are more limited that FSI asserts: FSI is barred from claiming lost profits for its breach of contract claim because of the limitation on liability clause, and FSI is barred from seeking damages related to CHI and Miraco in relation to its tortious interference claim. On July 31, 2008, I entered orders consistent with this opinion.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 4th day of August, 2008.